1   Peter Anderson, Esq., Cal. Bar No. 88891
        peteranderson@dwt.com
2   Sean M. Sullivan, Esq., Cal. Bar No. 229104
        seansullivan@dwt.com
3   Eric H. Lamm, Esq., Cal. Bar No. 324153
        ericlamm@dwt.com
4   DAVIS WRIGHT TREMAINE LLP
    865 South Figueroa Street, 24th Floor
5   Los Angeles, CA 90017-2566
    Tel: (213) 633-6800
6   Fax: (213) 633-6899

7   Attorney for Defendants
    ABEL TESFAYE, HAL LEONARD LLC,
8   UNIVERSAL MUSIC GROUP, INC.,
    UNIVERSAL MUSIC PUBLISHING, INC.,
9   UNIVERSAL MUSIC CORP., MATTITUDE
    MUSIC LLC, APPLE INC., HIPGNOSIS SONGS
10  GROUP, LLC, and AMAZON.COM, INC.

11                **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                    **WESTERN DIVISION**

| | |
|---|---|
| 14  NEIL FOX PAREKH pka SUNIEL FOX, an individual; and SHYHI HENRY HSAIO pka HENRY STRANGE, an individual; | Case No. 2:21-cv-07488-FLA-KESx |
| 16 | |
| 17        Plaintiffs, | DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER (1) BIFURCATING DISCOVERY OR, ALTERNATIVELY, (2) SETTING EARLY EXPERT DISCLOSURE AND DISCOVERY DATES AS TO THE EXTRINSIC TEST, AND (3) PERMITTING EARLY SUMMARY JUDGMENT MOTION AS TO THE EXTRINSIC TEST |
| 18        v. | |
| 19  ABEL MAKKONEN TESFAYE pka THE WEEKND, an individual; ADAM KING FEENEY pka FRANK DUKES, an individual; NICOLAS ALFREDO JAAR pka A.A.L., AGAINST ALL LOGIC, and/or NICO, an individual; THE WEEKND XO, LLC; THE WEEKND XO US LLC; THE WEEKND XO, INC.; THE WEEKND XO MUSIC, ULC; XO&CO., INC.; UNIVERSAL MUSIC CORPORATION; UNIVERSAL MUSIC GROUP, INC.; UNIVERSAL MUSIC PUBLISHING, INC., individually and dba UNIVERSAL MUSIC PUBLISHING GROUP; UMG RECORDINGS, INC.; REPUBLIC RECORDS, INC.; XO RECORDS | |
| 22 | Date:  April 8, 2022 |
| 23 | Time: 1:30 p.m. |
| 24 | Courtroom of the Honorable Fernando L. Aenlle-Rocha United States District Judge |
| 28        [Continued next page] | |

LLC; KOBALT MUSIC PUBLISHING
AMERICA, INC.; AMERICAN
MUSIC RIGHTS ASSOCIATION,
INC.; SONGS MUSIC PUBLISHING,
LLC; NYAN KING MUSIC, INC.;
MATTITUDE MUSIC, LLC;
PEERMUSIC LTD.; PEERMUSIC III,
LTD.; SONY MUSIC PUBLISHING
LLC; EMI CONSORTIUM MUSIC
PUBLISHING, LTD; HAL LEONARD
LLC; HIPGNOSIS SONGS GROUP,
LLC; BROADCAST MUSIC, INC.;
ASCAP ENTERPRISES LLC;
YOUTUBE ENTERTAINMENT
STUDIOS, INC.; APPLE INC.,
individually and dba APPLE MUSIC;
AMAZON, INC., individually and dba
AMAZON MUSIC; VIMEO.COM,
INC.; SPOTIFY USA, INC.; and DOES
1 through 10,

            Defendants.

# **TABLE OF CONTENTS**

**Page**

1.   INTRODUCTION ..................................................................................1

    (a)   Summary of Argument .............................................................1

    (b)   Summary of Plaintiffs' Claims ................................................3

    (c)   Procedural Summary ................................................................4

2.   THERE ARE COMPELLING REASONS TO BIFURCATE DISCOVERY WITH AN INITIAL PHASE AS TO THE EXTRINSIC TEST ......................5

    (a)   The Standards Applicable to this Motion ................................5

    (b)   Whether Plaintiffs Can Demonstrate Extrinsic Similarity Is a Discrete, Dispositive Issue that Warrants Bifurcation ...........................6

        (1)   The Requirement that a Copyright Plaintiff Prove Substantial Similarity under the Extrinsic Test ....................................6

        (2)   The Lack of Substantial Similarity under the Extrinsic Test Can and Often Is Decided on Summary Judgment Even with Conflicting Expert Reports ...........................................8

        (3)   Bifurcation and the Early Determination of Whether Plaintiffs Can Satisfy the Extrinsic Test Is Especially Appropriate Here.....9

            i.   The Claimed Similarities Are a Short Musical Fragment of Four Notes, Two Commonplace Chords, and a Handful of Other Unprotected Generic Elements ..............9

            ii.   The Claimed Similarities Are Not Sufficient under the Extrinsic Test ...................................................11

    (c)   Bifurcation Will Not Result in Duplication or Overlap ........................16

    (d)   Discovery on All Liability Issues and Damages before Deciding the Extrinsic Similarity Issue Would Be Inefficient and Wasteful ............17

        (1)   Discovery as to the Issue of Whether Copying Occurred ..........18

        (2)   Discovery as to the Issues of Direct, Contributory, and Vicarious Infringement ................................................19

(3)    Discovery as to Remedies.............................................................19

(e)    Bifurcation Will Avoid Prejudice to Defendants without Prejudicing Plaintiffs.............................................................21

(f)    At the Very Least, the Court Should Permit Early Expert Disclosures and Discovery and an Initial Summary Judgment Motion on Extrinsic Similarity ............................................23

3.    CONCLUSION ........................................................................................25

1

# **<u>TABLE OF AUTHORITIES</u>**

2

<b><u>Page(s)</u></b>

3

**Cases**

4

*A & M Records, Inc. v. Napster Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ...................................................................19

5

6

*Advertise.com, Inc. v. AOL, LLC*, No. CV 09–5983,
    2011 WL 13186156 (C.D. Cal. Aug. 15, 2011) .....................................17

7

8

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
    581 F.3d 1138 (9th Cir. 2009) ...................................................................7

9

10

*Bassil v. Webster*, No. 20-cv-05099,
    2021 WL 1235258 (C.D. Cal. Jan. 15, 2021)............................9, 17, 21

11

12

*Benay v. Warner Bros. Entm't*,
    607 F.3d 620 (9th Cir. 2010), *overruled on other grounds by*
    *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).....................8

13

14

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ...........................................................11, 13

15

16

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) .................................................................15

17

18

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (N.D. Cal. 2013).....................................................5

19

20

*Crawford-El v. Britton*,
    523 U.S. 574 (1998) ..................................................................................23

21

22

*Damiano v. Sony Music Entmt., Inc.*,
    168 F.R.D. 485 (D.N.J. 1996) .................................................................21

23

24

*Ellingson Timber Co. v. Great Northern Ry. Co.*,
    424 F.2d 497 (9th Cir. 1970) ...............................................................5, 17

25

26

*Erickson v. Blake*,
    839 F. Supp. 2d 1132 (D. Or. 2012)........................................................4

27

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985)............................................................19, 20

28

*Frisby v. Sony Music Entm't* No. CV 19-1712-GW-AGRX,
    2021 WL 2325646 (C.D. Cal. Mar. 11, 2021) ..........................................................3

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006), *overruled on other grounds by
    Skidmore*, 952 F.3d 1051 ........................................................................7, 8, 16

*Gable v. Nat'l Broad. Co.*,
    727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l
    Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) ...........................................................8

*Giglio v. Monsanto Co.*, No. 15-cv-2279,
    2016 WL 4098285 (S.D. Cal. 2016) ........................................................................23

*Goldberg v. Cameron*,
    787 F. Supp. 2d 1013 (N.D. Cal. 2011) ....................................................................13

*Granite Music Corp. v. United Artists Corp.*,
    532 F.2d 718 (9th Cir. 1976) ...................................................................................13

*Granite Music Corp. v. United Artists Corp.*,
    532 F.2d 718 (9th Cir. 1976) ...................................................................................13

*Gray v. Hudson*,
    No. 20-55401, 2022 WL 711246 (9th Cir. Mar. 10, 2022) .......................................13

*Hirst v. Gertzen*,
    676 F.2d 1252 (9th Cir. 1982) ...................................................................................5

*Jinro Am. Inc. v. Secure Invests., Inc.*,
    266 F.3d 993 (9th Cir. 2001), *opinion amended on denial of
    reh'g*, 272 F.3d 1289 (9th Cir. 2001) .........................................................................5

*Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009,
    2020 WL 2315805 (C.D. Cal. Apr. 3, 2020), *aff'd*, No. 20-55552,
    2021 WL 5564626 (9th Cir. Nov. 29, 2021) ...............................................................8

*Kouf v. Walt Disney Pictures & Television*,
    16 F.3d 1042 (9th Cir. 1994) .....................................................................................7

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) .....................................................................................5

*Loomis v. Cornish*,
    836 F.3d 991 (9th Cir. 2016) ...................................................................................18

iv

*Luvdarts, LLC v. AT & T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ...................................................................19

*M2 Software, Inc. v. Madacy Entm't*,
    421 F.3d 1073 (9th Cir. 2005) ....................................................................5

*MD Helicopters, Inc. v. Aerometals, Inc.*, No. 16-cv-02249,
    2019 WL 1227919 (E.D. Cal. Mar. 15, 2019) ..........................................1

*Moreno v. NBCUniversal Media, LLC*, No. CV 13-1038,
    2013 WL 12123988 (C.D. Cal. Sept. 30, 2013) ...............................17, 22

*Morrill v. Stefani*,
    U.S.D.C. Case No. 2:17-cv-07301-DMG-SK (C.D. Cal.) .................6, 8

*Morrill v. Stefani*,
    338 F. Supp. 3d 1051, 1062 (C.D. Cal. 2018) ...........................................6

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*,
    No. 02-C-2523,
    2004 WL 609326 (N.D. Ill. Mar. 23, 2004) ...........................................22

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ...................................................................19

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ...................................................................19

*Priority Records, Inc. v. Bridgeport Music, Inc.*,
    907 F. Supp. 725 (S.D.N.Y. 1995) ..........................................................21

*Reed v. AutoNation, Inc.*, CV 16-08916,
    2017 WL 6940519 (C.D. Cal. Apr. 20, 2017) .........................................24

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by*
    *Skidmore*, 952 F.3d 1051 ...............................................................7, 8, 18

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003), *overruled on other grounds by*
    *Skidmore*, 952 F.3d 1051 .........................................................................8

*Shame on You Prods., Inc. v. Elizabeth Banks*,
    120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015), *aff'd sub nom. Shame*
    *on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017) ..........8

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ..................................... 6, 7, 8, 11, 12, 13, 14, 18, 21

*Smith v. Weeknd*, No. CV 19-2507,
   2020 WL 4932074 (C.D. Cal. July 22, 2020), *aff'd sub nom. Clover v.*
   *Tesfaye*, No. 20-55861, 2021 WL 4705512 (9th Cir. Oct. 8, 2021) ......................9

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) ...............................................................................11

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000), *overruled on other grounds by*
   *Skidmore*, 952 F.3d 1051 ..........................................................................7, 10, 11

*Tisi v. Patrick*,
   97 F. Supp. 2d 539 (S.D.N.Y. 2000) ..................................................................13

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999) ...............................................................................5

*VMG Salsoul, LLC v. Ciccone*,
   824 F.3d 871 (9th Cir. 2016) ..............................................................................4, 8

*Wixen Music Pub., Inc. v. Triller Inc.*, No. 20-cv-10515,
   2021 WL 4816627 (C.D. Cal. Aug. 11, 2021) .................................5, 9, 17, 22, 23

*Zahedi v. Miramax, LLC*, No. CV 20-4512,
   2021 WL 3260603 (C.D. Cal. Mar. 24, 2021) ..................................................9, 17

**Statutes**

17 U.S.C.
   § 114(b)....................................................................................................................4
   § 504(b)..................................................................................................................20

**Rules**

Federal Rule of Civil Procedure
   1 ...............................................................................................................................5
   26(a)(2)(D)............................................................................................................24
   26(b)(2)..................................................................................................................23
   26(d)(3)..................................................................................................................24
   42(b)...........................................................................................................5, 6, 17

**Other Authorities**

HARVARD DICTIONARY OF MUSIC (DON MICHAEL RANDEL ED.,
    4TH ED. 2003)
       57 .............................................................................................................13
       172, 379 .................................................................................................10
       661-62, 899 ...........................................................................................10

2 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01[A] (2022) ...................18

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

### (a)   Summary of Argument

Plaintiffs bring this copyright infringement action over four notes, two chords, and other generic elements that Plaintiffs contend are copied in the song, *Call Out My Name*.  While Defendants deny that any copying occurred, this dispute can likely be resolved quickly and efficiently because the few allegedly copied elements are insufficient to establish the required substantial similarity in protectable expression under this Circuit's extrinsic test.

Defendants accordingly seek to bifurcate these proceedings into (1) an initial, 90-day phase of expert disclosures and discovery as to the extrinsic test, with an eye to an early summary judgment motion limited to that issue, and, if necessary, (2) a subsequent phase of discovery and dispositive motion practice on remaining liability issues and damages.[1]  Defendants respectfully submit that the Court should exercise its broad discretion to bifurcate these proceedings.

*First.*  Bifurcation is appropriate when, as here, there is a dispositive issue whose early determination could resolve the case, potentially avoiding substantial costs and delay, without prejudicing the parties.  *See below* at 5-6.

*Second.*  The extrinsic test is a dispositive issue because summary judgment must be granted for the defendants in a copyright infringement action if the plaintiff cannot satisfy the extrinsic test.  Also, the proof as to the extrinsic test in a music case such as this is narrow and limited to the works at issue and the reports and testimony of expert musicologists.  Further, the Court of Appeals has repeatedly affirmed

---

[1]   Although this Motion implicates discovery, "a motion [to bifurcate discovery] must be directed to the District Judge," rather than the Magistrate Judge, "because it implicates the structure of the scheduling order that he will issue in due course."  *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 16-cv-02249, 2019 WL 1227919 at *2 (E.D. Cal. Mar. 15, 2019).

summary judgment in music copyright infringement cases even when the plaintiff's expert claims similarity. While the foregoing, alone, establishes good cause to first deal with the extrinsic test, this is an especially compelling case for bifurcation because there are substantial reasons to conclude that Plaintiffs will be unable to satisfy the extrinsic test. *See below* at 6-15.

*Third.* The extrinsic test is a distinct, objective inquiry separate and apart from all other liability issues and all damage issues in a copyright infringement case. Because the extrinsic test compares the works to determine whether there is substantial similarity in protectable expression, to tee up that issue there is no need for discovery as to, for example, the Plaintiffs' preparation of their work, their ownership of the allegedly infringed copyright, their claim that Defendants had access to and copied their work, or their claimed damages, or Defendants' revenues, expenses, and any resulting profits from *Call Out My Name*. As a result, there is no overlap in the proposed two phases' discovery and, even if the case were to proceed to a second phase, there would be no duplication in discovery. *See below* at 16-17.

*Fourth.* Proceeding without bifurcation—with the parties required to undertake time-consuming, expensive, and intrusive fact discovery as to all liability issues and as to revenues, expenses, and profits before turning to expert discovery and the extrinsic test—will be inefficient and a complete waste of time, effort, and expense if Plaintiffs cannot satisfy the extrinsic test. *See below* at 17-21.

*Fifth.* While denying bifurcation would prejudice Defendants—and also prejudice Plaintiffs if they engage in a year of general discovery only to fail to satisfy the extrinsic test—bifurcating discovery will not prejudice Plaintiffs. Expert disclosures and discovery as to the extrinsic test will occur in any event, and bifurcation only moves those disclosures and discovery to the beginning rather than the end of discovery. Plaintiffs also have advised that they, like Defendants, already have retained an expert musicologist. Further, even if an early summary judgment motion as to the extrinsic test does not end this case, any later summary judgment

1  motion would be limited to other issues.  As a result, there also will be no duplicative

2  summary judgment motions.  *See below* at 21-23.

3      Accordingly, the Court should grant the Motion and order an initial phase as to

4  the extrinsic test, staying other discovery until, if necessary, a second phase.  If for

5  any reason the Court declines to bifurcate discovery, Defendants alternatively request

6  that the Court permit expert disclosures, expert discovery, and an initial summary

7  judgment motion as to this narrow issue at the outset of discovery.  *See below* at 23-

8  25.

9      **(b)    Summary of Plaintiffs' Claims**

10      Plaintiffs allege they are the authors of an instrumental musical composition

11  and sound recording titled "VIBEKING" ("*Vibeking*").  Compl. at 12, ¶ 41.  *Vibeking*

12  does not appear to have been publicly released,[2] and Plaintiffs do not allege they

13  shared it with any defendant directly.  Instead, Plaintiffs allege that in 2015 they sent

14  *Vibeking* to a non-party, Eric White, who they allege worked with defendant Abel

15  Tesfaye, a recording artist professionally known as The Weeknd.  *Id.* at 14-15, ¶ 48-

16  51.

17      In March 2018—almost three years after Plaintiffs allegedly sent *Vibeking* to

18  Mr. White—*Call Out My Name*, featuring Mr. Tesfaye, was released as a single and

19  included in a six-song, extended play record (an "EP") titled *My Dear Melancholy*.

20  *Id.* at 15, ¶ 54.  More than three years after the release of *Call Out My Name* and the

21  EP, Plaintiffs filed this action for copyright infringement.

22  ///

23

---

24      [2]    While is it not clear from the Complaint, it appears *Vibeking* is a lyric-less

25  "beat" or music bed, prepared to be offered to others who then add lyrics and possibly

    additional music.  *See, e.g., Frisby v. Sony Music Entm't* No. CV 19-1712-GW-

26  AGRX, 2021 WL 2325646, at *7 (C.D. Cal. Mar. 11, 2021) ("Plaintiff creates

    recorded 'beats'—meaning the underlying music of a song—to provide to recording

27  artists instrumentals upon which they can supply lyrics, typically by rapping or

28  singing over them.").

3

The allegedly copied elements in *Call Out My Name* are few.  There is no claim that the *Vibeking* sound recording was copied.[3]  Rather, of all the music in the two musical compositions, Plaintiffs—who are very specific in their Complaint—claim similarity only in generic elements, including meter, musical style, a commonplace chord progression consisting of two chords, and four notes in otherwise very different melodies.  *Id*. at 18-19, ¶¶ 62-67.

While the claimed similarities are few, Plaintiffs assert their claims for direct, contributory, and vicarious copyright infringement against many.  In addition to Mr. Tesfaye and his two co-songwriters, Plaintiffs also name twenty-nine companies, ranging from record labels, music publishers and administrators, to streaming services offered by companies such as Apple Inc., and Amazon.com, Inc.  Plaintiffs allege that these dozens of additional defendants are liable by reason of their respective ownership, publication, administration, production, distribution, and/or licensing of *Call Out My Name* and the EP, *My Dear Melancholy*.  *Id*. at 3-11, ¶¶ 6-37.

**(c)   Procedural Summary**

Defendants Hal Leonard LLC, Universal Music Group, Inc., Universal Music Publishing, Inc., Universal Music Corp., Mattitude Music LLC, Apple Inc., Hipgnosis Songs Group, LLC, and Amazon.com Inc. (collectively, with Mr. Tesfaye, "Defendants"), timely filed their Answer on January 24, 2022 (Doc. 39).  Mr. Tesfaye timely filed his answer on February 8, 2022 (Doc. 42).  Plaintiffs dismissed several other defendants, without prejudice (Doc. 11, 37, 38), leaving—in addition to the nine Defendants who have appeared—roughly fifteen defendants yet to be served.

///

---

[3]      "Sound recordings and musical compositions are separate works with their own distinct copyrights." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 877 (9th Cir. 2016) (quoting *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1135 n.3 (D. Or. 2012)).  Further, a sound recording copyright protects only "the actual sounds fixed in the sound recording." 17 U.S.C. § 114(b).

4

The Court has set a Scheduling Conference for April 8, 2022 (Doc. 41). Because this Motion bears on scheduling, Defendants have noticed it for the same day.

**2.** **THERE ARE COMPELLING REASONS TO BIFURCATE DISCOVERY WITH AN INITIAL PHASE AS TO THE EXTRINSIC TEST**

**(a)** **The Standards Applicable to this Motion**

Federal Rule of Civil Procedure 42(b) provides the Court "broad discretion to bifurcate proceedings '[f]or convenience or to avoid prejudice, or to expedite and economize.'" *Wixen Music Pub., Inc. v. Triller Inc.*, No. 20-cv-10515, 2021 WL 4816627 at *1 (C.D. Cal. Aug. 11, 2021) (quoting Fed. R. Civ. P. 42(b)); *accord M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005); *Jinro Am. Inc. v. Secure Invests., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001). The Court also has "power" under Rule 42(b) "to limit discovery to the segregated issues." *Ellingson Timber Co. v. Great Northern Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803–04 (Fed. Cir. 1999) ("A district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation.").

"One permissible reason to bifurcate is to defer costly discovery . . . until [a] potentially dispositive issue has been resolved." *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013) (citing *Ellingson*, 424 F.2d at 499). Another "favored purpose of bifurcation is to avoid a difficult question by first dealing with an easier dispositive issue." *Wixen*, 2021 WL 4816627 at *2 (citing *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982)). Courts also consider "several factors . . . including separability of the issues, simplification of discovery and conservation of resources, and prejudice to the parties." *Id.* at *1 (citations omitted); Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed

1   by the court and the parties to secure the just, speedy, and inexpensive determination
2   of every action and proceeding.").

3          Prior to the Ninth Circuit's seminal en banc decision in *Skidmore v. Led
4   Zeppelin, 952 F.3d 1051 (9th Cir. 2020)*, bifurcation and beginning with a first phase
5   as to the extrinsic test was effectively precluded because that test was linked to the
6   factual issue of access, namely whether the defendant had a reasonable opportunity to
7   hear the plaintiff's work.  As a result, fact discovery as to access had to be completed
8   before a motion for summary judgment could be brought on the extrinsic test.  *But see*
9   *Morrill v. Stefani, 338 F. Supp. 3d 1051, 1062 (C.D. Cal. 2018)* (granting summary
10  judgment after early expert discovery and disclosures as to extrinsic test; *see Morrill*
11  *v. Stefani*, U.S.D.C. Case No. 2:17-cv-07301-DMG-SK (C.D. Cal.) (Stipulation (Doc.
12  98) and Order (Doc. 99))).

13         However, with *Skidmore*'s abandonment of the inverse ratio rule, the extrinsic
14  test is now a narrow and distinct issue that does not require fact discovery.  *See below*
15  *at 7-8*.  Accordingly, Defendants seek to streamline these proceedings and avoid
16  substantial delay and expense in the determination of this action by the bifurcation of
17  discovery and summary judgment into two phases: (1) An initial phase as to the
18  narrow issue of whether Plaintiffs can establish the required substantial similarity
19  under the extrinsic test, during which discovery will be stayed on the remaining issues,
20  and (2) if necessary, a subsequent phase for remaining liability issues and damages.
21  All factors that courts consider under Rule 42(b) favor this bifurcation.

22      **(b)**     **Whether Plaintiffs Can Demonstrate Extrinsic Similarity Is a**
23               **Discrete, Dispositive Issue that Warrants Bifurcation**

24          **(1)**     **The Requirement that a Copyright Plaintiff Prove Substantial**
25                   **Similarity under the Extrinsic Test**

26         A copyright infringement claim requires proof of (1) plaintiff's ownership of a
27  valid copyright and (2) copying of protected aspects of the work.  *Skidmore, 952 F.3d*
28  *at 1064*.  That second "prong of the infringement analysis contains two separate

6

components: 'copying' and 'unlawful appropriation.'"  *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore*, 952 F.3d 1051).  The historical question of whether copying occurred includes factual and legal issues such as whether the plaintiff's work was widely disseminated so as to provide the defendant a reasonable opportunity to copy, and whether there is a "chain of events" that, by linking the plaintiff's work to the creators of the allegedly infringing work, provided the creators a reasonable opportunity to copy.  *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).

On the other hand, "unlawful appropriation" is determined by a two-part test.  "The first part, the extrinsic test, compares the objective similarities of specific expressive elements in the two works . . . .  The second part, the intrinsic test, 'test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.'"  *Skidmore*, 952 F.3d at 1064.  "At summary judgment, courts apply only the extrinsic test[.]"  *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by Skidmore*, 952 F.3d 1051.  Importantly, because *both* tests must be proven, "[a] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment[.]"  *Funky Films, Inc.*, 462 F.3d at 1077 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).

Also importantly, whether two works are substantially similar under the extrinsic test is now isolated from all the other factual and legal issues in a copyright infringement case.  In the past, the Ninth Circuit's inverse ratio rule "inextricably linked" substantial similarity and access by lowering the proof required to establish substantial similarity if discovery revealed a high degree of access.  *Skidmore*, 952 F.3d at 1065-66 (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *overruled on other grounds by Skidmore*, 952 F.3d 1051).  However, in *Skidmore* the Court of Appeals sitting en banc "reject[ed] the inverse ratio rule and overrule[d the Court's] precedent to the contrary."  952 F.3d at 1056.  As a result,

facts or discovery as to access is irrelevant to the extrinsic test.  *Id.* at 1069 ("[A]ccess
. . . in no way can prove substantial similarity").  Of course, damages also bear no
relevance to substantial similarity under the extrinsic test.

> **(2)** **The Lack of Substantial Similarity under the Extrinsic Test**
> **Can and Often Is Decided on Summary Judgment Even with**
> **Conflicting Expert Reports**

Substantial similarity under the extrinsic test "may often be decided as a matter
of law." *Funky Films, Inc.*, 462 F.3d at 1076-77; "Indeed, '[w]e have frequently
affirmed summary judgment in favor of copyright defendants on the issue of
substantial similarity'"); *see, e.g., Benay v. Warner Bros. Entm't*, 607 F.3d 620, 629
(9th Cir. 2010) (affirming summary judgment for failure to satisfy extrinsic test),
*overruled on other grounds by Skidmore*, 952 F.3d 1051; *Rice v. Fox Broad. Co.*, 330
F.3d 1170, 1177 (9th Cir. 2003) (same), *overruled on other grounds by Skidmore*, 952
F.3d 1051; *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1151
(C.D. Cal. 2015) (summary judgment granted for failure to satisfy extrinsic test), *aff'd
sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017); *see
also Rentmeester*, 883 F.3d at 1123 (affirming dismissal at pleading stage for failure
to satisfy extrinsic test).

Moreover, summary judgment may be granted for failure to satisfy the extrinsic
test even when the plaintiff provides a conflicting expert report or declaration.  *See,
e.g., Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 836–37 (C.D. Cal. 2010)
(gathering cases), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th
Cir. 2011); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 879-80 (9th Cir. 2016) (even
accepting plaintiff's expert reports, claimed similarity between musical works not a
substantial similarity); *Morrill*, 338 F. Supp. 3d at 1060-62 (rejecting plaintiff's
expert's claimed similarities between musical works as insufficient under the extrinsic
test); *Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009, 2020 WL 2315805 at
*7 (C.D. Cal. Apr. 3, 2020) (summary judgment granted despite "dueling expert

reports" where only defendants' expert "applied reliable principles and methods" in comparing musical works), *aff'd*, No. 20-55552, 2021 WL 5564626 at *1 (9th Cir. Nov. 29, 2021) (plaintiff's expert "failed to filter out similarities that are attributable to prior art, as required under the extrinsic test"); *Smith v. Weeknd*, No. CV 19-2507, 2020 WL 4932074 at *6 (C.D. Cal. July 22, 2020) (plaintiffs' expert's report regarding musical works "does not filter out unprotectable elements or otherwise assist the Court in performing the 'analytic dissection' required of the extrinsic test"), *aff'd sub nom. Clover v. Tesfaye*, No. 20-55861, 2021 WL 4705512 (9th Cir. Oct. 8, 2021).

> **(3)** **Bifurcation and the Early Determination of Whether Plaintiffs Can Satisfy the Extrinsic Test Is Especially Appropriate Here**

As a result of the established law summarized above, bifurcation is appropriate because the issue of whether Plaintiffs can satisfy the extrinsic test for substantial similarity is narrow, requires no other discovery, and could resolve this entire case. *See, e.g.*, *Zahedi v. Miramax, LLC*, No. CV 20-4512, 2021 WL 3260603 at *1 (C.D. Cal. Mar. 24, 2021) ("Bifurcation is particularly appropriate when resolution of a claim or issue might dispose of the entire case."); *Wixen*, 2021 WL 4816627 at *2 (bifurcating discovery and summary judgment on potentially dispositive copyright ownership issue); *Bassil v. Webster*, No. 20-cv-05099, 2021 WL 1235258 at *2 (C.D. Cal. Jan. 15, 2021) (bifurcating liability and damages in infringement claim where liability turned on access and substantial similarity).

But bifurcation is particularly appropriate here because the outcome is clear: Plaintiffs' claims will not survive the extrinsic test's required analytical dissection and disregard of unprotected elements.

> **i.** **The Claimed Similarities Are a Short Musical Fragment of Four Notes, Two Commonplace Chords, and a Handful of Other Unprotected Generic Elements**

In their Complaint, Plaintiffs are specific as to the claimed similarities and that specificity confirms they cannot satisfy the extrinsic test.

9

First, Plaintiffs allege that in *Call Out My Name*, Mr. Tesfaye sings four notes that are similar in pitch and rhythm to four notes played by a guitar in *Vibeking*. Compl. at 18-19, ¶¶ 65-67.[4]  Because *Call Out My Name* and *Vibeking* are in different keys, Plaintiffs' Complaint refers to the allegedly similar four notes by scale degrees, namely 1-3-5-4 in both songs.  *Id.* at 13 n.5, 18, ¶ 63.  However, Plaintiffs also allege that the duration of the fourth note is different in the two songs.[5]  As a result, the alleged similarity actually is the pitch <u>and</u> duration of only three notes and the pitch, but not the duration, of the fourth note.

Second, Plaintiffs allege that *Vibeking* and *Call Out My Name* have the same chord progression, namely a i chord followed by a iv chord.[6]  *Id.* at 18, ¶ 65.  Actually, the chord progression in *Call Out My Name* is the opposite, namely a iv chord to a i

---

[4]     Briefly, "pitch" is the quality or frequency of sound that is perceived as being "higher . . . or lower."  *See* HARVARD DICTIONARY OF MUSIC 661-62, 899 (DON MICHAEL RANDEL ED., 4TH ED. 2003) (definition of pitch).  A "note" is a sound with specified pitch and duration.  *Id.* at 571 (definition of "note").  The pitch of a note can be referred to by letter (*e.g.*, A, B-flat, B, C, *etc.*).  As pitches are grouped into various stepwise patterns called "scales," which include "major" and "minor" scales, a note's pitch can also be referred to by its position in a scale (*e.g.*, scale degrees 1, 2, 3, *etc.*).  *Id.* at 757-58.  Notes are identified by their pitch (in the manner above) and their duration (*e.g.*, whole notes, half notes, quarter notes, eighth notes, *et seq.*).  *Id.* at 571.

[5]     Plaintiffs' transcriptions in their Complaint differ as to the duration of the fourth note in *Vibeking*.  In the transcription in paragraph 44 of the Complaint, the fourth note in *Vibeking* is *ten* beats (Compl. at 13, ¶ 44), but in the transcription in paragraph 67, the fourth note in *Vibeking* is *nine* beats (*id.* at 18-19, ¶ 67).  Either way, however, that is very different from the fourth note in *Call Out My Name*, which Plaintiffs' transcription shows is a dotted quarter note, or only *three* beats.  *Id.* at 19, ¶ 67.

[6]     A chord is "a collection of three or more pitches sounded simultaneously."  A chord is named by its "root," which is ordinarily the lowest pitch in the chord.  It can be referred to either alphabetically (*e.g.*, an A major chord), or with Roman numerals indicating the root's scale degree with reference to the key (*e.g.*, I (a "major one chord"), i ("minor one chord"), or iv ("minor four chord")).  *See* HARVARD DICTIONARY OF MUSIC at 172, 379 (definitions of chord and harmony).  A series of two or more chords is a chord progression.

1    chord.  But Plaintiffs' reversal of the chords does not help them because, even if

2    Plaintiffs were correct, a i to iv chord progression is commonplace.  *See below* at 13.

3        Lastly, Plaintiffs allege various other general similarities, such as a minor key,

4    6/8 time signature, tempo, and "atmospheric and melancholic sound."  Compl. at 18,

5    ¶ 62.

6        Plaintiffs allege no similarities beyond the foregoing.

7                    **ii.    The Claimed Similarities Are Not Sufficient under the**

8                                    **Extrinsic Test**

9        Employing the extrinsic test to the allegedly similar elements on summary

10   judgment will be straightforward.  As mentioned above, the extrinsic test "compares

11   the objective similarities of specific expressive elements in the two works" to

12   determine whether alleged copying rises to unlawful appropriation of protected

13   material.  *See above* at 7 (quoting *Skidmore*, 952 F.3d at 1064).  "The extrinsic test

14   requires 'analytical dissection of a work and expert testimony.'"  *Swirsky v. Carey*,

15   376 F.3d 841, 845 (9th Cir. 2004) (quoting *Three Boys Music*, 212 F.3d at 485).

16   "Crucially, because only substantial similarity in protectable expression may

17   constitute actionable copying that results in infringement liability, 'it is essential to

18   distinguish between the protected and unprotected material in a plaintiff's work.'"

19   *Skidmore*, 952 F.3d at 1064 (quoting *Swirsky*, 376 F.3d at 845); *see, also Skidmore*,

20   952 F.3d at 1070 (the court must "disregard the non-protectable elements"

21   (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002))).

22       It is an understatement that Plaintiffs face an uphill battle in trying to establish

23   substantial similarity under the extrinsic test.

24       Plaintiffs' first claimed similarity is that both songs include three eighth notes

25   on the scale degrees 1-3-5 followed by a fourth note on the scale degree 4, but with a

26   different duration in each song.  However, those four notes are each part of longer and

27   different melodic phrases.  Even accepting the Complaint's own transcriptions, in

28   *Vibeking* the melodic phrase begins with the guitar playing a scale degree 1 that is

held for nine beats followed by 1-3-5-4, and simply sustains the scale degree 4 for ten beats—or nine beats (*see above* at 10 n.5)—and plays almost nothing else until the melodic phrase is repeated.  *See* Compl. at 13, ¶ 44:



But, again accepting the Complaint's transcriptions, the 1-3-5-4 sequence in *Call Out My Name* is preceded by very different notes than *Vibeking*'s sustained note, and then continues with scale degrees 3-1.  *See id.* at 16-17, ¶ 58:

The melodic phrase in *Call Out My Name* then continues with substantial additional melodic materials that bear no similarity to anything in *Vibeking*.  *See id.* at 19, ¶ 67 (transcribing measures 22-28 of *Call Out My Name*).

As a result, the only melodic material at issue is three notes—1-3-5—and the scale degree 4 pitch of a fourth note.  Yet *Skidmore* held that three-note sequences are not protectable and reaffirmed a prior holding that "'a four-note sequence common in

1    the music field' is not the copyrightable expression in a song." *Skidmore*, 952 F.3d at

2    1071 (quoting *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 721 (9th

3    Cir. 1976)).  Accordingly, as a matter of law this claimed four-note similarity is not a

4    substantial similarity in protected expression under the extrinsic test.

5            Further, the scale degrees 1-3-5-4 simply outline the underlying chord

6    progression of i to iv by way of an arpeggio.  "[A]n arpeggio, sometimes called a

7    broken chord, is '[a] chord whose pitches are sounded successively, ... rather than

8    simultaneously.'" *Skidmore*, 952 F.3d at 1070 (quoting HARVARD DICTIONARY OF

9    MUSIC at 57).  That is, 1-3-5 are simply the three pitches of a i chord played

10   successively rather than simultaneously, followed by the first pitch of a iv chord.

11   *Skidmore* also has confirmed that an arpeggio is an unprotectable "musical building

12   block."  952 F.3d at 1070-71 ("Just as we do not give an author 'a monopoly over the

13   note of B-flat,' … arpeggios cannot be copyrighted by any particular composer.").

14           As a result, and as a matter of law, Plaintiffs' first claimed similarity of three

15   eighth notes on the scale degrees 1-3-5 followed by a fourth note on the scale degree

16   4, consists of unprotected material that must be "disregard[ed]" under the extrinsic

17   test.  *Skidmore*, 952 F.3d at 1070 (quoting *Cavalier*, 297 F.3d at 822).

18           Plaintiffs' second claimed similarity is that both songs include a i chord

19   followed by a iv chord.  However, a i to iv chord progression is ubiquitous and "can

20   be found in songs in all genres." *Tisi v. Patrick*, 97 F. Supp. 2d 539, 543 (S.D.N.Y.

21   2000).  As another public domain musical building block, these two chords, even in

22   the order alleged by Plaintiffs, also are unprotected material that must be disregarded.

23           Finally, Plaintiffs' remaining alleged similarities such as minor key, meter,

24   tempo, and an "atmospheric and melancholic sound" (Compl. at 18, ¶ 62), also are

25   public domain musical building blocks that are available to all.  *See, e.g., Gray v.

26   Hudson*, No. 20-55401, 2022 WL 711246, at 17-18  (9th Cir. Mar. 10, 2022) ("Plainly,

27   no person may copyright the minor scale"; musical works' "similar textures is far too

28   abstract of a similarity to be legally cognizable."); *Tisi*, 97 F. Supp. 2d at 543, 544,

548-49 (holding key, tempo, I-IV chord progression, and rhythm are "basic, non-protectable musical elements"); *Goldberg v. Cameron*, 787 F. Supp. 2d 1013, 1022 (N.D. Cal. 2011) ("[E]lements such as the mood of a musical composition are not protectable."; summary judgment granted).

While the caselaw is clear that Plaintiffs' claimed similarities are not protectable expression, an initial survey also demonstrates the prevalence of these musical building blocks in earlier songs. *See Skidmore*, 952 F.3d at 1071 (it is "black-letter law" that "any element from prior works or the public domain are not considered original parts and not protected by copyright"). Examples of prior uses of the same or closely related fragments of music on which Plaintiffs base their claim include, for example:

- **"Shine On You Crazy Diamond, Pts. 1-5,"** Pink Floyd (1975): the bass and guitar parts include the scale degrees 1-3-5 in equal eighth notes over a i chord, followed by a longer note on scale degree 4 over a iv chord; in a minor key and in 6/8 meter.

- **"Jump at the Sun,"** folk song, public domain: begins with scale degrees 1-3-5 in three equal eighth notes over a i chord, followed by a longer note on scale degree 4 over a iv chord; in a minor key and in 6/8 meter.

- **"Still Got The Blues,"** Gary Moore (1990): the bass part includes the scale degrees 1-3-5 in equal eighth notes over a i chord, followed by scale degree 4 over a iv chord on the downbeat of the next bar; in a minor key and in 6/8 meter.

- **"Can't Stand Losing You,"** The Police (1979): the bass part includes scale degrees 1-3-5 in equal eighth notes over a i chord, followed by scale degree 4 on a strong beat over a iv chord; in a minor key.

- **"The Grandparent's Waltz,"** Colin Hume (2003): begins with scale degrees 1-3-5 in three equal notes over a i chord, followed by a longer

14

note on scale degree 4 over a iv chord on the next downbeat; in a minor key and in 3/4 meter.

- **"Son Ar Skoff,"** folk song, public domain: begins with scale degrees 1-3-5 in three equal notes, followed by a longer note on scale degree 4 on the next downbeat; in a minor key and in 3/4 meter.

- **"Morfa Rhuddlan,"** folk song, public domain: includes scale degrees 1-3-5 followed by scale degree 4 on the next downbeat; in a minor key and in 3/4 meter.

- **"She's Not There,"** Santana (1977): the introduction begins with an instrumental melody on scale degrees 1-3-5 in equal eighth notes followed by longer note on scale degree 4; in a minor key.

- **"She's Not There,"** The Zombies (1964): the opening notes of the vocal melody are on scale degrees 1-3-5 in equal eighth notes over a i chord, followed by scale degree 4 on a strong beat over a IV chord; in a minor key.

- **"Para los Rumberos,"** Santana (1970): the bass line starts with scale degrees 1-3-5 as three equal notes over a i chord, followed by scale degree 4 on the next strong beat over a IV chord; in a minor key.

Further, even before 2015—when Plaintiffs allege they created *Vibeking*—Mr. Tesfaye had co-written and released songs with the same or similar fragments of music. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002) ("[I]t is factually and legally impossible" for the defendant to have copied plaintiff's work when defendant's work predates plaintiff's). Examples include:

- **"Thursday,"** The Weeknd (2011): The chorus includes a vocal melody on scale degrees 1-3-5-4; in a minor key.

- **"Valerie,"** The Weeknd (2012): The chorus includes a vocal melody on scale degrees 1-3-5 leading to scale degree 4 in the next bar; in a minor key.

15

- **"Till Dawn (Here Comes the Sun),"** The Weeknd (2012): The chorus includes a vocal melody on scale degrees 1-5 leading to a longer note on scale degree 4, followed by two additional notes on scale degrees 3 and 1, as in the melody of *Call Out My Name*; in a minor key.
- **"Love in the Sky,"** The Weeknd (2013): The verse includes a vocal melody on scale degrees 1-3-5 leading to the scale degree 4, followed by two additional notes on scale degrees 3 and 1, as in the melody of *Call Out My Name*; in a minor key.
- **"Pretty,"** The Weeknd (2013): The chorus includes a vocal melody on scale degrees 1-5-4-3; in a minor key and in 4/4 meter.
- **"Love Me Harder,"** Ariana Grande featuring The Weeknd (2014): The pre-chorus includes a vocal melody on scale degrees 1-1-3-5 leading to the scale degree 4 on a strong beat; in a minor key.

Again, these are only initial examples, and Defendants expect to identify even more songs establishing that the fragment of music on which Plaintiffs base their claim is commonplace and predates *Vibeking*.

Plaintiffs' threshold and fundamental problem is that their claimed similarities are commonplace musical building blocks and, under the extrinsic test, the Court must disregard them. What remains in *Vibeking* and *Call Out My Name* are two songs that are otherwise very different, including in the measures containing the allegedly similar four-note sequence. *See Funky Films*, 462 F.3d at 1078 (summary judgment affirmed; the extrinsic test is not satisfied if "the two works reveal[ ] greater, more significant differences and few real similarities.").

**(c)** **Bifurcation Will Not Result in Duplication or Overlap**

There is no risk that bifurcation with an initial discovery phase limited to expert musicologist disclosures and discovery will result in duplication or overlap of discovery if the case were to proceed to a second, general discovery phase. That is so

because the extrinsic test for substantial similarity is narrow, with the evidence needed to determine it limited to the works themselves and the reports and testimony of the parties' respective musicologists.  *See above* at 6-8.  Conversely, the evidence as to other issues in the case—running the gamut from the creation of Plaintiff's work and *Call Out My Name* to the revenues and expenses of each of some twenty-four defendants—is completely irrelevant to the extrinsic test.  *See below* at 17-21.

The extrinsic test is a "distinct and separable" issue, and dealing with it at the outset of this case will not risk duplication of discovery should the case proceed to a second phase.  *Moreno v. NBCUniversal Media, LLC*, No. CV 13-1038, 2013 WL 12123988 at *2 (C.D. Cal. Sept. 30, 2013) (bifurcating discovery into liability and damages phases, where liability turned on licensing issue with limited witnesses and evidence); *Wixen*, 2021 WL 4816627 at *2 (bifurcating copyright claim to decide dispositive issue of plaintiff's ownership where it would "not result in overlapping discovery requests"); *Bassil*, 2021 WL 1235258 at *3 (bifurcating liability and damages in infringement claim where liability turned on access and substantial similarity and plaintiff failed to show "an exceptional case of overlap" between liability and damages); *Zahedi*, 2021 WL 3260603 at *2 (bifurcation where "distinct questions of ownership and the statute of limitations rely on witnesses and sources of proof different from those relating to damages"); *Advertise.com, Inc. v. AOL, LLC*, No. CV 09–5983, 2011 WL 13186156 at *3 (C.D. Cal. Aug. 15, 2011) (bifurcating discovery into initial phase to determine trademark validity).

**(d)**     **Discovery on All Liability Issues and Damages before Deciding the Extrinsic Similarity Issue Would Be Inefficient and Wasteful**

Bifurcating discovery on the extrinsic similarity issue will also further economy and efficiency, and save considerable resources, because it could avoid extensive and costly discovery entirely.  In fact, "[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co.*, 424 F.2d at 499.

1    The factual and legal issues and discovery that will be avoided if discovery is
2    bifurcated and Plaintiffs are unable to satisfy the extrinsic test include the following.

3                    **(1)    Discovery as to the Issue of Whether Copying Occurred**

4        In addition to discovery as to the required element of Plaintiff's creation and
5    ownership of *Vibeking*, there is the factual and legal issue of whether Plaintiffs can
6    raise a genuine dispute that copying even occurred. *See above* at 6-7; *Skidmore*, 952
7    F.3d at 1064 ("[A] plaintiff must prove that a defendant copied the work."); 2 M.
8    NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01[A] (2022) ("[A]bsent copying,
9    there can be no infringement of copyright, regardless of the extent of similarity.").

10       As noted above, a genuine dispute as to copying generally requires proof of
11   access, either by evidence of widespread dissemination of the plaintiff's work or
12   evidence of a chain of events linking the plaintiff's work to the creators of the
13   defendant's work. *See above* at 7.  Widespread dissemination in turn includes issues
14   not only as to whether the plaintiff's work was distributed to the public, but also
15   whether the plaintiff's work "saturat[ed] … a relevant market in which the plaintiff
16   and the defendant participate." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016).
17   While it appears *Vibeking* was not publicly released, that still leaves discovery as to
18   when, how, and to whom Plaintiffs submitted it, and the legal issue of whether those
19   facts establish widespread dissemination.

20       As for access based on a "chain of events" theory, at a minimum discovery
21   would include depositions of Mr. Tesfaye, the two other songwriters of *Call Out My*
22   *Name*, and everyone else involved in its creation, as well as Plaintiffs and also Eric
23   White, who Plaintiffs allege claims to have provided *Vibeking* to Mr. Tesfaye. *See*
24   *above* at 3.  To trigger an inference of copying, the plaintiff must also prove that the
25   works "share similarities probative of copying." *Skidmore*, 952 F.3d at 1064 (quoting
26   *Rentmeester*, 883 F.3d at 1117).  But that is a different similarity analysis than the
27   extrinsic test for unlawful appropriation and "may be based on the overlap of
28   unprotectable as well as protectable elements." *Id.*

All of this discovery will be for naught if Plaintiffs are unable to satisfy the extrinsic test.

### (2)  Discovery as to the Issues of Direct, Contributory, and Vicarious Infringement

In addition to their claim for direct copyright infringement, Plaintiffs allege claims for contributory and vicarious infringement.  Those claims have additional requirements and, as a result, trigger additional factual and legal issues as to as to each of the allegedly contributorily or vicariously liable defendants.

Contributory copyright infringement applies if a defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)).  "Vicarious copyright liability is an 'outgrowth' of respondeat superior [and requires that the defendant] had both the (1) 'right and ability to supervise the infringing activity' and (2) 'a direct financial interest' in the activity." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (quoting *A & M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)).

Accordingly, these secondary liability claims would require additional and separate discovery as to whether *each of more than a dozen defendants* knew of the claimed infringement, whether it materially contributed to or induced the claimed infringement, whether it had the right and ability to supervise the allegedly infringing activity, and whether it had a direct financial interest in that allegedly infringing activity.

Once again, all of this discovery will be for naught if Plaintiffs are unable to satisfy the extrinsic test.

### (3)  Discovery as to Remedies

A copyright plaintiff's primary remedy, and presumably what Plaintiffs seek here, is an award of profits from the alleged infringement.  Copyright liability for

1    profits is several, not joint, with "each defendant … severally liable for his or its own
2    … profit…." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519
3    (9th Cir. 1985) (emphasis omitted).  As a result, profit discovery alone could include
4    discovery *as to each defendants'* revenues from the alleged infringement, each
5    defendants' "deductible expenses," and each defendants' "elements of profit
6    attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

7          It is an understatement that Plaintiffs have cast a wide net, naming as defendants
8    not only the writers and performer of *Call Out My Name* but also multiple music
9    publishers and streaming platforms.  Plaintiffs will likely seek from each of the nine
10   Defendants already served and the fifteen defendants still to be served, sensitive and
11   confidential information and documents as to their respective sales, royalties, and
12   other revenues from *Call Out My Name*, and the EP, *My Dear Melancholy*, as well as
13   their respective direct costs such as recording, manufacturing, production,
14   distribution, marketing, and promotional expenses, and indirect costs such as overhead
15   and taxes.  Additional discovery would be necessary as to the "elements of profit
16   attributable to factors other than the copyrighted work" (17 U.S.C. § 504(b)), such as
17   the lyrics and music in *Call Out My Name* that Plaintiffs do not claim infringes, the
18   performances of Mr. Tesfaye and the other recorded artists, Mr. Tesfaye's celebrity,
19   the other sound recordings on the EP, and the nature and extent of marketing and
20   promotional efforts.  Discovery into these myriad issues will require the collection,
21   review, preparation, and production of documents from numerous defendants, and
22   many of these documents will contain highly confidential, personal, and proprietary
23   financial information.

24         Discovery into these myriad issues also will include expert witnesses and
25   discovery identifying and allocating each defendant's revenues from *Call Out My*
26   *Name* and the EP, and each defendant's expenses, including overhead, associated with
27   *Call Out My Name* and the EP.  *See, e.g., Frank Music*, 772 F.2d at 516 (deductible
28   overhead determined by, *inter alia*, "segregating overhead expenses into general

20

1   categories, such as general and administrative costs, sales and advertising, and
2   engineering and maintenance[, and] allocat[ing] a portion of these costs to the
3   production of [the allegedly infringing work] based on a ratio of the revenues from
4   that production as compared to [the defendant's] total revenues."). In addition, expert
5   witnesses and discovery will be required as to apportioning any profits each of the two
6   dozen defendants have received, between profits attributable to the allegedly similar
7   four-note fragment, on the one hand, and profits attributable to the numerous elements
8   that generated the profits, on the other hand. *See above* at 19-20.

9        In total, the parties' discovery in this case directed to issues other than the
10  extrinsic test is likely to involve thousands of man-hours and hundreds of thousands
11  of dollars in legal and expert fees. Also once again, all of this discovery will be for
12  naught if Plaintiffs are unable to establish substantial similarity under the extrinsic
13  test. Not surprisingly, courts have recognized the burden and cost of damages
14  discovery in copyright infringement cases and, even before *Skidmore*, have often
15  bifurcated discovery on damages where costly discovery can potentially be avoided.
16  *See, e.g.*, *Bassil*, 2021 WL 1235258 at *2; *Hayden v. Chalfant Press, Inc.*, 281 F.2d
17  543, 544 (9th Cir. 1960); *Damiano v. Sony Music Entmt., Inc.*, 168 F.R.D. 485, 493
18  (D.N.J. 1996); *Priority Records, Inc. v. Bridgeport Music, Inc.*, 907 F. Supp. 725, 734
19  (S.D.N.Y. 1995).

20        **(e)      Bifurcation Will Avoid Prejudice to Defendants without**
21                **Prejudicing Plaintiffs**

22        Finally, bifurcation will avoid substantial prejudice to Defendants while not
23  prejudicing Plaintiffs.

24        Defendants identify above specific costly, burdensome, and intrusive discovery
25  that will be *completely unnecessary and wasted* if Plaintiffs are unable to satisfy the
26  extrinsic test. *See above* at 17-21. There also are substantial reasons to conclude that
27  Plaintiffs will not be able to satisfy that test. *See above* at 9-16. Defendants will be
28  substantially prejudiced if they have to bear the substantial expense, effort, and delay

21

1    of full discovery and wait until the close of fact discovery to raise the fundamental

2    and distinct defect that Plaintiffs' claims fail the extrinsic test.

3          On the other hand, bifurcation will not prejudice Plaintiffs.  Indeed, if these

4    proceedings are bifurcated and the Court finds that Plaintiffs cannot demonstrate

5    substantial similarity under the extrinsic test, Plaintiffs will benefit by also avoiding

6    otherwise wasted time and money on discovery.  *See Moreno*, 2013 WL 12123988 at

7    *2 (noting that bifurcation of discovery in a copyright claim "could save both Parties

8    significant time and money") (citing *Ocean Atl. Woodland Corp. v. DRH Cambridge*

9    *Homes, Inc.*, No. 02-C-2523, 2004 WL 609326 (N.D. Ill. Mar. 23, 2004)).  Also, the

10   parties' expert disclosures and discovery as to the extrinsic test could help them

11   resolve the case without the need for a summary judgment ruling.

12         Furthermore, even if Plaintiffs are able to avoid an early summary judgment

13   motion as to the extrinsic test, they still will have suffered no prejudice.

14         First, bifurcation is unlikely to cause any delay in these proceedings.  The initial

15   phase for expert disclosures and discovery will be short, with Defendants proposing it

16   be completed within 90 days.  Further, whether the extrinsic test is dealt with at the

17   beginning or the end of discovery, Plaintiffs will have to deal with it.  Bifurcation will

18   merely rearrange the sequence of discovery and will not make the discovery more

19   onerous for Plaintiffs.  *Wixen*, 2021 WL 4816627 at *4 ("[Defendant] is not requesting

20   any additional discovery, only that initial discovery that may foreclose later discovery

21   proceed first.").  Also, as discussed above, bifurcation of the extrinsic test will not

22   result in any additional or duplicative discovery.

23         Second, this case is in its early stages and no trial date has been set, another

24   factor that favors bifurcation.  *See id.* at *3.

25         Third, since an initial summary judgment motion on the extrinsic test is narrow

26   and depends on expert testimony, it will be comparatively inexpensive to litigate, and

27   the issue will not be raised in a subsequent motion for summary judgment.  As a result,

28   the single summary judgment motion permitted by the Court's Standing Order (Doc.

1  10) would simply be split into two, with the first narrow and the second unlikely to be

2  necessary.

3  Finally, any prejudice Plaintiffs might try to attribute to bifurcation would be

4  substantially outweighed by the prejudice to Defendants of determining extrinsic

5  similarity at the close of fact discovery rather than the outset of the case. *See, e.g.,*

6  *Wixen*, 2021 WL 4816627 at *4 ("While [Plaintiff] may be prejudiced by some delay

7  . . . the likelihood of prejudice towards [Defendant] by forcing it to proceed with costly

8  discovery is high[.]").   Indeed, courts have found that bifurcating and summary

9  judgment on even more complex factual issues would serve both convenience and the

10  interests of the parties. *See, e.g.*, *Giglio v. Monsanto Co.*, No. 15-cv-2279, 2016 WL

11  4098285 at *2 (S.D. Cal. 2016) (bifurcating initial phase concerning expert issue of

12  whether defendant's Roundup product was capable of causing cancer, which "would

13  enable the parties and the Court to arrive expeditiously at a potentially dispositive

14  issue"); *see also Wixen*, 2021 WL 4816627 at *2 (bifurcating ownership issue, which

15  turned on whether plaintiff's clients had surrendered copyright title and the scope of

16  plaintiff's rights as a licensing agent, notwithstanding argument that bifurcation would

17  "likely result in multiple motions for summary judgment").

18  Bifurcation should be ordered here.

19  **(f)   At the Very Least, the Court Should Permit Early Expert**

20  **Disclosures and Discovery and an Initial Summary Judgment**

21  **Motion on Extrinsic Similarity**

22  As explained above, declining to bifurcate discovery in these proceedings

23  would be inefficient, inconvenient, and expose Defendants to significant prejudice in

24  the form of highly burdensome, intrusive, and expensive discovery.   But even if the

25  Court nevertheless declines to bifurcate discovery, the benefits of deciding the

26  extrinsic similarity issue first establish good cause to permit expert disclosures, expert

27  discovery, and an initial summary judgment motion early in these proceedings.

28  ///

23

The Federal Rules of Civil Procedure "vest[] the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (citing Fed. R. Civ. Pro. 26(b)(2)); *see also* Fed. R. Civ. Pro. 26(d)(3) (the court may alter the sequence of discovery "for the parties' and witnesses' convenience and in the interests of justice"). This includes the discretion to alter the sequence and timing of expert discovery. *See* Fed. R. Civ. P. 26(a)(2)(D) (providing expert disclosures must be made "at the times and in the sequence that the court orders").

The existence of a potentially dispositive issue that would save the parties and the Court significant time and expense if decided first provides sufficient grounds to reorder discovery and permit an early, limited summary judgment motion. For example, in *Reed v. AutoNation, Inc.*, CV 16-08916, 2017 WL 6940519 at *7 (C.D. Cal. Apr. 20, 2017), the court, while declining to bifurcate discovery in an employment case because of duplicative and overlapping discovery—absent here— found it "judicially economical" to permit the defendants to file an initial summary judgment motion as to which defendant employed the plaintiff, and, "if necessary and if desired, a second [summary judgment motion] addressing the merits of Plaintiff's claims." *Id.* at *8.

Unlike the threshold issue in *Reed*, the narrow substantial similarity issue here is easily severable and will not result in duplicative discovery. Thus, there is no reason to decline to bifurcate discovery in this case. At very least, however, the Court should not require Defendants to wait until after the close of discovery—by which time hundreds of thousands of dollars in legal fees will have been expended, thousands of documents will likely have been produced, and numerous party, non-party, and expert depositions will have taken place—to rule on a narrow dispositive issue that involves only the works and expert musicologists. Instead, if bifurcation is not ordered, then the Court should set early expert disclosure and discovery deadlines as to the extrinsic

///

24

1    test and permit Defendants to file an initial summary judgment motion limited to that

2    issue.

3    **3.     <u>CONCLUSION</u>**

4          For the foregoing reasons, Defendants respectfully request that this Court

5    bifurcate discovery with an initial phase to determine the narrow issue of substantial

6    similarity under the extrinsic test, and a subsequent phase, if necessary, to address

7    remaining issues of liability and damages.  Alternatively, Defendants request that the

8    Court order early expert disclosures and discovery as to the extrinsic test.  In either

9    event, Defendants respectfully request leave to file an initial summary judgment

10   motion limited to the extrinsic test, without prejudice to, if the initial motion does not

11   dispose of the case, filing a later summary judgment motion on other issues at the

12   close of discovery.

13

14   Dated: March 11, 2022

                                        _____/s/ Peter Anderson_____
15                                              Peter Anderson, Esq.
                                            Sean M. Sullivan, Esq.
16                                              Eric H. Lamm, Esq.
                                        DAVIS WRIGHT TREMAINE LLP
17                                          Attorneys for Defendants
                                        ABEL TESFAYE, HAL LEONARD LLC,
18                                          UNIVERSAL MUSIC GROUP, INC.,
                                        UNIVERSAL MUSIC PUBLISHING,
19                                          INC.,UNIVERSAL MUSIC CORP.,
                                        MATTITUDE MUSIC LLC, HIPGNOSIS
20                                      SONGS GROUP, LLC, APPLE INC., and
                                            AMAZON.COM, INC.

21

22

23

24

25

26

27

28

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, and my business address is 865 South Figueroa Street, 24th Floor, Los Angeles, CA 90017-2566.  I am over the age of 18 and not a party to this action.  On March 11, 2022, I e-mailed the foregoing document to the following counsel of record for plaintiffs in this action:

Stephen M. Doniger, at stephen@donigerlawfirm.com

Benjamin Firestone Tookey, at btookey@donigerlawfirm.com

Christopher S Ghazarian, at info@chris.law


Executed on March 11, 2022 at Los Angeles, California.  I declare under penalty of perjury that the above is true and correct.

<u>        /s/ Peter Anderson        </u>