Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Christopher S. Ghazarian (SBN 308147)
info@chris.law
CHRIS GHAZARIAN LAW
633 West 5th Street, 28th Floor
Los Angeles, CA 90071
Telephone: (213) 787-4401

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL FOX PAREKH, et al.,<br><br>Plaintiff,<br><br>v.<br><br>ABEL MAKKONEN TESFAYE, et al.,<br><br>Defendants.[1] | Case No.: 2:21-cv-07488-FLA-KES<br>*Hon. Fernando L. Aenlle-Rocha Presiding*<br><br>**JOINT RULE 26(f) REPORT**<br><br>**Scheduling Conference**<br>Date: April 8, 2022<br>Time: 1:00 p.m.<br>Courtroom: 6B |

---

[1] Peermusic Ltd., Peermusic III Ltd., Vimeo.com, Inc., Spotify USA, Inc., YouTube Entertainment Studios, Inc., Broadcast Music, Inc., The Weeknd XO, LLC, XO Records LLC, and XO&CO., Inc. were dismissed from this case (collectively, the "Dismissed Defendants"). Dkts. 11, 37-38, 55.

1

**JOINT RULE 26(F) REPORT**

Plaintiffs Neil Fox Parekh and Shyhi Henry Hsaio, on the one hand; and Defendants Abel Tesfaye, Hal Leonard LLC, Universal Music Group, Inc., Universal Music Publishing, Inc., Universal Music Corp., Mattitude Music LLC, Hipgnosis Songs Group, LLC, Apple Inc., and Amazon.com, Inc., sued as "Amazon, Inc." (collectively, and for purposes of this Report, "Defendants"),[2] on the other hand, hereby submit their Joint Rule 26(f) Report following the conference of counsel required by Federal Rules of Civil Procedure 16(b) and 26(f), Local Rule 26-1, and this Court's February 3, 2022 Order setting a Scheduling Conference for April 8, 2022 (Dkt. 41).

### A. STATEMENT OF THE CASE

Plaintiffs' Contentions

Parekh and Hsaio (together, "Epikker") filed this case to redress the infringement of their copyrights in their original musical composition *Vibeking*.

Epikker created *Vibeking* in April 2015 and own all copyrights therein. *Vibeking* is registered with the U.S. Copyright Office under Reg. No. SR0000872910. Defendant Abel Tesfaye's ("The Weeknd") DJ, PNDA (identified in the Complaint), requested that Epikker send *Vibeking* to him so he could in turn play it for The Weeknd. Epikker did just that, and The Weeknd confirmed to PNDA, twice, that he listened to *Vibeking* and liked it. But nothing came of it.

---

[2] On March 10, 2022, Epikker served the Summons and Complaint on Defendants UMG Recordings, Inc., also sued as "Republic Records, Inc.," Sony Music Publishing LLC, Kobalt Music Publishing America, Inc., American Music Rights Association, Inc., and EMI Consortium Music Publishing, Ltd., and their responses to the Complaint are due March 31, 2022. On March 18, 2022, Epikker served ASCAP Enterprises LLC, whose response to the Complaint is due April 8, 2022. The Weeknd XO Music, ULC, formally known as The Weeknd XO, Inc., has waived service and its response to the Complaint is due May 16, 2022. Epikker has not yet served defendants Adam King Feeney, Nicolas Alfredo Jaar, and Nyan King Music, Inc. (collectively, the "Non-Appearing Defendants").

2

That is, until The Weeknd released *Call Out My Name*, the hit single from his EP titled *My Dear Melancholy*, in 2018. *Call Out My Name* contains quantitatively and qualitatively similar material to distinctive elements in *Vibeking*. In other words, Defendants copied substantial portions of *Vibeking*; incorporated them into *Call Out My Name*; and sold, performed, and otherwise exploited *Call Out My Name* to great commercial success, all without Epikker's consent.

To be sure, those similarities are substantial. Both works are in a minor key and are played in the same uncommon time signature at a similar tempo, prominently feature nearly identical sequences of notes as the focal points of their "hook" melodies that share nearly identical metric placement, and prominently feature the same chordal accompaniment (itself an unusually minimalistic oscillation) underlying those "hook" melodies that share the same harmonic rhythm, among other things.

Wrongly arguing that none of those remarkable similarities are individually protectable and ignoring the additional protection that attaches to this original combination of elements, Defendants seek to bifurcate the case and file an early dispositive motion on the "extrinsic test," a portion of the substantial similarity analysis that is part of the second element of Epikker's direct infringement claim. But the "extrinsic test" is not a "preliminary" or "threshold" issue.[3] And notwithstanding that Defendants' contemplated dispositive motion will almost

---

[3] Defendants' contrary assertion below intentionally decontextualizes the portion of *Gray* that it cites in support. *Grey* does not characterize extrinsic similarity as a "threshold issue" whatsoever, much less a "threshold issue" for purposes of bifurcation. *See Gray v. Hudson*, No. 20-55401, 2022 WL 711246, at *6 (9th Cir. Mar. 10, 2022) (internal citations omitted) (under the heading "Protected Elements Contained in Joyful Noise," stating that "[b]ecause the extrinsic test for substantial similarity requires us to distinguish between 'protected and unprotected material in a plaintiff's work,' the threshold issue is what—if anything—about the Joyful Noise ostinato qualifies as original expression that can serve as the basis for a copyright infringement claim.").

certainly be denied,[4] their proposed bifurcation will only serve to delay this proceeding and unduly prejudice Epikker in the process—as set forth more fully in Epikker's opposition to Defendants' bifurcation motion (*see* Dkt. 56).

As noted below, given the strong evidence of access and substantial similarity, Epikker intends to seek summary adjudication of liability in its favor and objects to a bifurcation that affords Defendants two bites at the liability apple. However, Epikker does not object to bifurcating discovery into liability and damages phases given the number of parties for whom discovery will relate solely to damages.

Defendants' Contentions

Even as pleaded in the Complaint – Plaintiffs' best possible foot forward – Plaintiffs' claim of copyright infringement is frivolous. Aside from defects in their claim that the creators of *Call Out My Name* had access to Plaintiffs' unpublished "beat," "VIBEKING," Plaintiffs unequivocally and explicitly claim similarity in commonplace musical elements that, as a matter of established law, are not protected by copyright.

Thus, Plaintiffs allege that both songs include a fragment of three successive eighth notes followed by a note of similar pitch but different duration, with an i ("minor one") chord followed by a iv ("minor four") chord, in a minor key, a 6/8 time signature, similar tempo, and an "atmospheric and melancholic sound." Complaint at 18, ¶¶ 62, 67. However, as a matter of law there is no copyright

---

[4] Defendants' contrary arguments rely heavily on *Gray*, 2022 WL 711246. But that was an appreciably weaker case than this one, and the district court still initially denied defendants' summary judgment motion on extrinsic similarity. Ultimately, the Ninth Circuit held that the essentially two-note pitch sequence at issue was unoriginal, and that the "textures" and "timbre" of that sequence were too abstract to qualify as a protectable combination. *See id*. at *7, 10. But the Ninth Circuit found no inconsistency or error in the district court's initial denial of summary judgment.

4

1   protection in a three- or four-note sequence,[5] in the commonplace i and iv chord

2   progression,[6] minor key,[7] rhythm and tempo,[8] or the mood or texture of a musical

3   work.[9]  Indeed, Plaintiffs' claimed similarities are so commonplace they appear in

4   numerous works predating "VIBEKING."[10]

5       Whether Plaintiffs' claimed copying is of "original expression that can serve

6   as the basis for a copyright infringement claim" is a "threshold issue"[11] that is

7   separate and distinct from all other issues, including not only damages but

8

9

10  [5] *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1071 (9th Cir. 2020) (en banc)
    (three notes in a row not protectible; "'a four-note sequence common in the music
11  field' is not the copyrightable expression in a song" (quoting *Granite Music Corp.
    v. United Artists Corp.*, 532 F.2d 718, 721 (9th Cir. 1976)); *see also Gray v.*
12  *Hudson*, No. 20-55401, 2022 WL 711246, at *2, 8, 10 (9th Cir. Mar. 10, 2022) (as
    matter of law, no copyright protection in passages of eight notes of equal length
13  with pitches corresponding to scale degrees 3-3-3-3-2-2-2-6 or 3-3-3-3-2-2-2-1).

14
    [6] *See Gray*, 2022 WL 711246, at *8 ("'[C]hord progressions may not be
15  individually protected' because they are basic musical building blocks." (quoting
    *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004))); *see also Tisi v. Patrick*, 97
16  F. Supp. 2d 539, 543 (S.D.N.Y. 2000) (the I to IV chord progression "can be found
    in songs in all genres.").
17

18  [7] *See Gray*, 2022 WL 711246, at *7 ("Plainly, no person may copyright the minor
    scale, as such scales are common musical building blocks belonging to the
19  public.").

20
    [8] *See Gray*, 2022 WL 711246, at *7; *see also Tisi*, 97 F. Supp. 2d at 548-49 (no
21  protection in rhythm and tempo).
    [9] *Gray*, 2022 WL 711246, at *7-8 (musical work copyrights do not protect
22  instruments' sound or timbre; "similar textures is far too abstract of a similarity to
    be legally cognizable.").
23

24  [10] *See* Defs' Memo. (Doc. 51-1) in support of Motion to Bifurcate at 14-16.

25
    [11] *Gray*, 2022 WL 711246, at *6.
26

27

28

Plaintiffs' claim of access.[12]  Accordingly, Defendants have moved for an Order bifurcating discovery to provide for an initial phase limited to expert musicologist disclosures and discovery as to this Circuit's extrinsic test for substantial similarity in protected expression.  That bifurcation will enable Defendants to file an early motion for summary judgment on the ground that Plaintiffs cannot establish substantial similarity in protected expression under the extrinsic test.  *See* Defs' Notice of Motion (Doc. 51).[13]  Because both Plaintiffs and Defendants already have retained musicologists, this initial phase can be completed and an early motion for summary judgment filed by June 17, 2022.  *See* [*Proposed*] Order (Doc. 51-2).

**B.  SUBJECT MATTER JURISDICTION**

The parties agree that insofar as Plaintiffs assert claims for direct, vicarious, and contributory infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a)-(b).

**C.  LEGAL ISSUES**

Plaintiffs' Contentions

Epikker does not believe there can be a genuine dispute as to its ownership of a valid copyright in *Vibeking*, Defendants' access to *Vibeking*, or the substantial similarity between *Vibeking* and *Call Out My Name*. So owing, this is a case on which liability—or at least ownership, access, and extrinsic similarity (if not intrinsic similarity as well and, as a result, the balance of the substantial similarity element)—may be decided through summary judgment proceedings.

---

[12] *Skidmore*, 952 F.3d at 1069 (rejecting inverse ratio rule; "access . . . in no way can prove substantial similarity").

[13] If Plaintiffs believe, as they state below, that they can move for summary judgment as to the extrinsic test, pursuant to the Court's Standing Order the parties will determine which side will move.

1  It is Epikker's understanding Defendants' primary defense will be that the

2  objective similarities between the two songs are elements that are not entitled to

3  copyright protection. In support of this defense, Defendants have alluded to several

4  "prior" songs that may share some of the elements at issue—as defendants do in

5  every case like this. But none of that purported "prior art"[14] includes all the shared

6  elements between, or uses them in the same way as, the two songs at issue.

7  Epikker intends to seek discovery into the full scope of Defendants'

8  exploitation of *Call Out My Name*, including international exploitation, as the

9  predicate act doctrine allows recovery of damages stemming from copyright

10  infringements outside the United States that are linked to domestic infringements.

11  Epikker anticipates that Defendants will challenge that scope of discovery.

12  Accordingly, bifurcating discovery in this case into liability and damages

13  phases may be appropriate, but not so for *further* bifurcating the liability phase into

14  an initial phase of expert discovery on extrinsic similarity only. That would

15  introduce needless inefficiency into the case and unduly prejudice Epikker for the

16  reasons set forth in Epikker's opposition to Defendants' motion to bifurcate (*see*

17  Dkt. 56).

18  Defendants' Contentions

19  As stated above, Defendants contend that Plaintiffs' claimed similarity is in

20  unprotected, commonplace musical elements and, as a result, Plaintiffs cannot

21

22  [14] As discussed in Epikker's opposition to Defendants' bifurcation motion (Dkt.
23  56), "prior art" is a concept taken from patent law that traditionally is not relevant
    in assessing copyrightability—a claimed invention must be new and novel to be
24  patentable, whereas there is no such novelty requirement for copyrightability.
    However, the term "prior art" has increasingly become loose shorthand in
25  copyright cases over musical compositions (but remains anomalous in copyright
    cases over other types of works) for characterizing elements of an allegedly
26  infringed work as unprotectable by referencing third-party works—here, the
    purported "prior art" being other songs that may contain some (but not all) of the
27  elements of *Vibeking* copied in *Call Out My Name*.
28

7

1  satisfy the extrinsic test for substantial similarity in protected expression.

2  Defendants contend that, for that reason alone, Plaintiffs' copyright claims fail.

3  Defendants also contend that Plaintiffs will be unable to raise a genuine

4  dispute that copying even occurred, including because Plaintiffs' "VIBEKING"

5  was not widely disseminated, there are no substantial similarities probative of

6  copying as opposed to independent creation, and the creators of *Call Out My Name*

7  did not have access to "VIBEKING."  In addition, Defendants contend that

8  Plaintiffs will be unable to establish the required elements of Plaintiffs' claims for

9  vicarious and contributory copyright infringement.

10  As stated above, Defendants have moved for an initial phase of discovery

11  limited to the extrinsic test, that would be followed by a single, narrow motion for

12  summary judgment limited to the extrinsic test, and, if the case is not resolved by

13  that motion, a later motion would exclude the extrinsic test.  In other words,

14  Defendants' proposed bifurcation includes splitting a single motion for summary

15  judgment into two parts, with an early motion as to the extrinsic test and, only if

16  the case is not resolved, a later motion as to other problems with Plaintiffs' claims.

17  *See* Defs' Memo. at 22-23.  Contrary to Plaintiffs' assertion above, the extrinsic

18  test is a threshold issue in this action because it can be decided discretely and is an

19  issue on which *all* of Plaintiffs' claims rest.  *See, e.g.*, *Wixen Music Pub., Inc. v.*

20  *Triller, Inc.*, No. 20-cv-10515, 2021 WL 4816627 at *2 (C.D. Cal. Aug. 11, 2021)

21  ("Bifurcation is particularly appropriate when resolution of a single . . . issue could

22  be dispositive of the entire case.") (citation omitted).  Furthermore, there would be

23  no "second bite at the apple."  Bifurcation would not prejudice Plaintiffs and

24  would simply defer expensive and time-consuming discovery as to other issues, all

25  of which would be rendered unnecessary if Plaintiffs cannot satisfy the extrinsic

26  test.  *Id.* at 17-23.

27  In this Joint Report above, Plaintiffs' raise the advisability of bifurcating

28  liability and damages.  Defendants believe a single liability phase would be

8

wasteful and delay the case, because that would encompass multiple issues and discovery, including, for example, written discovery and multiple party and non-party depositions regarding access and independent creation and fact and expert discovery on damages (*see* Plaintiffs' Contentions in Part D, below), all of which would be rendered moot if Plaintiffs cannot satisfy the threshold issue of the extrinsic test.  Defendants concur, however, that a separate phase as to remedies is appropriate and, accordingly, suggest trifurcation: an initial, short phase as to the extrinsic test, a second phase (if necessary) as to other liability issues, and a third phase (if necessary) as to remedies.

### D. <u>PARTIES AND EVIDENCE</u>

<u>Plaintiffs' Contentions</u>

Parekh and Hsaio are the Plaintiffs. All named Defendants remain in the case other than the Dismissed Defendants and the as-yet Non-Appearing Defendants. Epikker has also sued unnamed "Doe" Defendants. Should Defendants reveal in their Initial Disclosures or discovery responses any third parties involved in the chain of alleged infringements of VIBEKING, Epikker will move to add such entities as parties to this action.

Percipient witnesses and key evidence in the case may include, without limitation:

- Epikker, regarding the creation and registration of *Vibeking*, communications with PNDA regarding *Vibeking*, the discovery of *Call Out My Name*, and the similarities between the two songs;

- The *Call Out My Name* co-authors, regarding their access to and communications regarding *Vibeking*; their subsequent creation of *Call Out My Name*; and the similarities between the two songs;

- PNDA, regarding access to *Vibeking*, communications with Epikker and Defendants regarding *Vibeking* and *Call Out My Name*, and the similarities between the two songs;

9

- Defendants' revenues and profits earned from the licensing, distribution, and other exploitation of *Call Out My Name*;

<u>Defendants' Contentions</u>

Defendants are the named defendants who have appeared in this action, namely:

- Abel Tesfaye
- Hal Leonard LLC
- Universal Music Group, Inc.
- Universal Music Publishing, Inc.
- Universal Music Corp.
- Mattitude Music LLC
- Hipgnosis Songs Group, LLC
- Apple Inc.
- Amazon.com, Inc., sued as "Amazon, Inc."

Hal Leonard LLC and Mattitude Music LLC do not have a corporate parent. Universal Music Group, N.V., a Netherlands public limited company, is the ultimate parent of Universal Music Group, Inc., Universal Music Publishing, Inc., and Universal Music Corp.  Hipgnosis Songs Group, LLC's parent is Hipgnosis Holdings UK Limited, which is owned by Hipgnosis Songs Fund Limited, a publicly traded company.  Apple Inc. and Amazon.com, Inc., are each publicly traded companies.

Defendants' present belief is that the following are percipient witnesses:

- Abel Tesfaye
- Adam King Feeney
- Nicolas Jaar
- Eric White
- Neil Fox Parekh
- Shyhi Henry

JOINT RULE 26(f) REPORT

1  • One or more representatives of Hal Leonard LLC

2  • One or more representatives of Universal Music Group, Inc.

3  • One or more representatives of Universal Music Publishing, Inc.

4  • One or more representatives of Universal Music Corp.

5  • One or more representatives of Mattitude Music LLC

6  • One or more representatives of Hipgnosis Songs Group, LLC

7  • One or more representatives of Apple Inc.

8  • One or more representatives of Amazon.com, Inc.

9  Defendants' present belief is that the following are key documents and other

10  evidence:

11  • Audio recordings of the works at issue.

12  • Audio recordings of works predating "VIBEKING" with all or some of

13    the commonplace elements Plaintiffs contend are copied from

14    "VIBEKING."

15  • Documents as to Plaintiffs' claim of access.

16  • Documents and agreements, or extracts thereof, as to each Defendants'

17    involvement, or lack of involvement, in the creation of *Call Out My*

18    *Name*.

19  • Documents and agreements, or extracts thereof, as to each Defendants'

20    involvement, or lack of involvement, in the exploitation of *Call Out My*

21    *Name*.

22  • Documents, data compilations, or tangible things as to each Defendants'

23    revenues from the alleged copyright infringement, deductible expenses,

24    and profits, if any, and as to the apportionment of claimed profits

25    between the allegedly infringing elements and other factors.

26  **E. <u>DAMAGES</u>**

27  <u>Plaintiffs' Contentions</u>

28  Epikker estimates that its provable damages range between $2-4 million.

Epikker is entitled to recover the actual damages suffered as a result of Defendants' alleged infringements of Epikker's copyrights in *Vibeking*—i.e., the amount of money adequate to compensate Epikker for the reduction of the fair market value of *Vibeking* attributable to Defendants' alleged infringements as represented by, e.g., lost profit margin, lost licensing fees, etc. *See* Ninth Circuit Model Civil Jury Instructions, No. 17.33; *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708-09 (9th Cir. 2004); *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007). Epikker is also entitled to Defendants' profits attributable to their alleged infringements of Epikker's copyrights in *Vibeking*. *See* Ninth Circuit Model Civil Jury Instructions, Nos. 17.32, 17.34.

Without the benefit of discovery, Epikker's current understanding is that as of September 2021, *Call Out My Name* had amassed over $1 million in publishing royalties in the U.S. alone from streaming, sales, and airplay, excluding any potential publishing royalties made from synchronization and general licenses. Epikker expects that the facts in this case will ultimately establish a damages valuation similar to *Gray v. Hudson* (discussed above), in which the jury awarded the plaintiffs $2.8 million in damages prior to the case being appealed to the Ninth Circuit.

Defendants' Contentions

Defendants contend that Plaintiffs overstate the claimed damages, which are at best nominal.  The measure of actual damages is a hypothetical market value for Plaintiffs' "beat," which is nominal.  *See Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002).  As to profits, a copyright plaintiff may only recover a defendant's profits to the extent they are attributable to the allegedly infringing portions of the defendant's work.  17 U.S.C. § 504(b).  Plaintiffs claim copying only of commonplace, unprotected elements, and any *Call Out My Name* profits are attributable to factors that Plaintiff do not claim were copied, including all of the music that Plaintiffs concede is not copied from "VIBEKING," *Call Out My*

12

*Name*'s lyrics, as to which Plaintiffs make no claim, Mr. Tesfaye's performance, the recording, engineering, and production of *Call Out My Name*, and the marketing of *Call Out My Name*.

**F. INSURANCE**

Plaintiffs' Contentions

Plaintiffs do not have insurance coverage for the claims at issue.

Defendants' Contentions

Defendants are investigating whether there is potential insurance coverage applicable to Plaintiffs' claims.

**G. MOTIONS**

Plaintiffs' Contentions

Depending on what is revealed in Defendants' discovery responses, Epikker may wish to move to add additional defendants should those responses reveal the involvement of currently unknown parties in the chain of alleged infringement of Epikker's copyrights in *Vibeking*.

Epikker opposed Defendants moving to bifurcate discovery with an initial phase in which the parties pursue and complete *only* expert discovery on extrinsic similarity between the two songs at issue.

Defendants' Contentions

Defendants do not anticipate filing motions to add other parties or claims, to amend their pleadings, transfer venue, or challenge the Court's jurisdiction.

**H. DISPOSITIVE MOTIONS**

Plaintiffs' Contentions

Plaintiff anticipates filing a motion for summary adjudication as to Defendants' liability for infringing the copyrights in *Vibeking*.

Defendants' Contentions

The issues or claims as to which Defendants presently anticipate filing a dispositive motion are:

13

- Whether the alleged copying of "VIBEKING" constitutes copying of protected expression under the extrinsic test.
- Whether Plaintiffs can establish a genuine dispute that copying in fact occurred.
- Whether Plaintiffs can establish a genuine dispute that those Defendants who Plaintiffs claim are vicariously liable for the alleged infringement, had the right and ability to supervise the allegedly infringing activity and a direct financial interest in that activity. *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013).
- Whether Plaintiffs can establish a genuine dispute that those Defendants who Plaintiffs claim are contributorily liable for the alleged infringement knew of the alleged infringement and either materially contributed to or induced it. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017).

## I. **MANUAL FOR COMPLEX LITIGATION**

This case does not utilize the procedures of the Manual for Complex Litigation.

## J. **STATUS OF DISCOVERY**

As of the filing of this Report, the parties have not yet commenced discovery.

## K. **DISCOVERY PLAN**

The parties have agreed to exchange Fed. R. Civ. P. 26(a) initial disclosures by April 1, 2022.

<u>Plaintiffs' Contentions</u>

Epikker does not believe any changes to the Fed. R. Civ. P. 26(a) initial disclosures are necessary.

Epikker anticipates using all discovery procedures allowed under the Federal Rules (depositions, document requests, interrogatories, requests for admissions,

etc.) in accordance with the scheduling order entered in this case. Epikker also anticipates the parties entering into an appropriate stipulated protective order governing the disclosure and use of any sensitive information or documents exchanged during discovery.

Epikker anticipates that it will use those procedures to take discovery on, among other things, Defendants' access to and communications regarding *Vibeking*, the creation of *Call Out My Name*, the similarities between the two songs at issue, and revenues and profits earned from the licensing, distribution, and other exploitation of *Call Out My Name*.

Bifurcating discovery into liability and damages phases may be appropriate given that many defendants are only in this case because they profited from the alleged infringement. But as previously mentioned, and given Epikker's intention to seek summary adjudication of liability, it is inappropriate to further bifurcate a liability phase into a first phase devoted solely to extrinsic similarity so that Defendants can file a dispositive motion on that sub-element of liability.

Defendants' Contentions

Defendants do not believe any changes to the Fed. R. Civ. P. 26(a) initial disclosures are necessary.

Under the proposed phases of discovery, Defendants intend in a first phase to provide initial and expert reports from their musicologist as to the extrinsic test, direct a subpoena for documents to Plaintiffs' musicologist, and take the deposition of Plaintiffs' musicologist.

As to issues other than the extrinsic test, Defendants intend, at the appropriate time given the Court's ruling on the Motion to Bifurcate, to serve written discovery consisting of requests for production, interrogatories, and requests for admission on Plaintiffs, including as to, for example, Plaintiffs' creation of "VIBEKING," Plaintiffs' claimed ownership of a copyright in "VIBEKING," Plaintiffs' claim that the creators of *Call Out My Name* had access

to "VIBEKING," and Plaintiffs' prior exploitation, if any, of "VIBEKING." Defendants then anticipate taking the depositions of Plaintiffs and of witnesses identified in Plaintiffs' responses to discovery.  Defendants anticipate a follow up round of written discovery, possibly with additional depositions.

## L. DISCOVERY CUTOFF

Plaintiffs' Contentions

*See* **Exhibit A** (non-bifurcated proceeding) or **Exhibit B** (bifurcating discovery into liability and damages phases); *see also infra*, Section M, for Epikker's explanation as to why there are four scheduling worksheets.

Defendants' Contentions

*See* **Exhibit C** (bifurcating discovery into extrinsic similarity and general discovery phases) or **Exhibit D** (trifurcating discovery into extrinsic similarity, liability, and damages phases).

## M. EXPERT DISCOVERY

Plaintiffs' Contentions

Due to the parties' impasse as to whether this case should be bifurcated, and if so what form that bifurcation should take, the parties are unfortunately unable to agree on a joint set of pretrial and trial dates. Epikker's proposed dates for a non-bifurcated proceeding are set forth in **Exhibit A**, and its proposed dates for a proceeding bifurcating discovery into liability and damages phases is set forth in **Exhibit B**.

Epikker's understanding is that Defendants' propose either a proceeding bifurcating discovery into an extrinsic similarity phase and a general discovery phase (dates for which are set forth in **Exhibit C**), or a proceeding trifurcating discovery into extrinsic similarity, liability, and damages phases (dates for which are set forth in **Exhibit D**).

Epikker contends that Defendants' Exhibit C is a sleight-of-hand attempt at artificially undermining the unduly prejudicial effect Defendants' proposed

bifurcation (Dkt. 51-1) will cause Epikker. In what appears to be an attempt to argue that their proposed bifurcation will not delay the proceeding and that the parties have generally agreed to the same dates, Defendants mirror most of the dates in Epikker's Exhibit A. That is problematic for at least three reasons. First, Defendants propose exchanging opening expert reports only *two weeks* after the parties' April 8, 2022 conference with this Court, and unreasonably short amount of time (especially in relation to the proposed amount of time allotted for rebuttal expert reports). Second, Defendants' dates do not account for the delay that will be caused while this Court decides a dispositive motion on extrinsic similarity or the gap between this Court's denial of that motion and the opening of the rest of discovery. And third, Defendants' dates only provide for slightly over four months from the date of the *filing* of that dispositive motion and the fact discovery cutoff (by which time any/all discovery disputes must be *heard*) for the remainder of discovery (i.e., as to the rest of liability *and* damages). In short, Exhibit C is a blatant attempt to jam Epikker and squeeze the amount of time it has to prosecute its claims if Defendants' proposed bifurcation does not pan out for them.

At no point have the parties actually discussed trifurcation, and Epikker contends that the dates in Exhibit D are problematic for the same reasons as above and introduce even more unnecessary procedural hurdles and delay.

<u>Defendants' Contentions</u>

Plaintiffs, in an attempt to complicate scheduling, do the Court a disservice by refusing to submit a single Scheduling Form. They justify that failure by claiming, for example, that they could not exchange their musicologist's initial report as to the extrinsic test by April 22, 2022, as Defendants' Motion to Bifurcate proposes. *See,* [proposed] Order (Doc. 51-2). However, their Opposition to that Motion makes no such claim. Moreover, they do not dispute that they retained their musicologist before filing this action; and, in addition, at the <u>February 24, 2022</u>, Local Rule 7-3 pre-filing conference, Defendants' counsel proposed the

April 22, 2022, and other dates and Plaintiffs did not suggest they could not meet those dates.  Plaintiffs are fully capable of providing their already retained expert's report by April 22, 2022.

With that in mind, Defendants submitted to Plaintiffs the Scheduling Form attached to this Report as Exhibit C, which (1) accepted all of Plaintiffs' proposed dates, including the April 4, 2023, trial date, and (2) added the proposed extrinsic expert dates as a subsection should the Court grant the Motion.  Plaintiffs abandoned their own proposed dates to now insist on unilaterally submitting a different Scheduling Form (Exhibit B) that includes bifurcation but inexplicably moves the trial date five months to October 3, 2023.  Plaintiffs' proposed delay until October 2023 serves no purpose beyond creating the false impression that a short initial phase as to the extrinsic test will delay the case.

Indeed, Defendants' proposal for an alternative trifurcation – with an initial phase as to the extrinsic test followed, if necessary, by Plaintiffs' suggested separate phases as to liability and remedies – only moves the proposed trial date by two months.

Attached as Exhibit C is Defendants' proposed Schedule which includes Plaintiffs' proposed dates for non-bifurcation, plus the dates proposed in Defendants' Motion if bifurcation is ordered.  Plaintiffs have declined to provide their proposed dates under that schedule, and their Opposition to Defendants' Motion to Bifurcate does not propose dates different from what the Motion proposes.

Attached as Exhibit D is Defendants' proposed Schedule should the Court, order trifurcation.  Plaintiffs have not provided their proposed dates under that Schedule.

## N. **SETTLEMENT CONFERENCE/ADR**

The parties have agreed to private mediation pursuant to ADR Procedure No. 3 under Local Rule 16-15.4.

1

<u>Plaintiffs' Contentions</u>

Epikker made an early settlement offer on January 21, 2022. Defendants made a counteroffer the week of March 14-18, 2022. On March 22, 2022, Epikker proposed a bracket (i.e., a conditional offer). Defendants rejected Epikker's bracket on March 23, 2022. Epikker agrees with Defendants' characterization below that the parties are continuing to pursue the possibility of settlement, including because the parties have exchanged further offers since March 23, 2022.

<u>Defendants' Contentions</u>

Plaintiffs' proposed bracket was not productive and Defendants have asked that Plaintiffs provide a response to Defendants' March 16, 2022, counteroffer.  As of now, Plaintiffs have not done so.  However, the parties are continuing to pursue the possibility of settlement.

## O. **TRIAL ESTIMATE**

Assuming that no facts are adjudicated before trial either by this Court or by stipulation, the parties estimate that seven to nine court days may be required for trial before a jury. This estimate is based on what testimony may be needed regarding Epikker's case-in-chief (access and substantial similarity), including expert testimony regarding the extrinsic similarity between the two songs at issue; the revenues and profits that Defendants (each of them) earned as a result of exploitation of *Call Out My Name*; and whatever affirmative defenses Defendants may assert.

<u>Plaintiffs' Contentions</u>

Epikker presently anticipates calling approximately 25 witnesses at trial.

<u>Defendants' Contentions</u>

Defendants presently anticipate calling approximately seventeen witnesses.

## P. **TRIAL COUNSEL**

Plaintiff's Trial Counsel: Stephen M. Doniger, Christopher S. Ghazarian, Benjamin F. Tookey.

19

1    Defendants' Trial Counsel: Peter Anderson, Sean M. Sullivan, and Eric H.

2   Lamm.

3   **Q. INDEPENDENT EXPERT OR MASTER**

4    The parties do not believe that this case requires the Court to appoint a

5   master pursuant to Fed. R. Civ. P. 53 or an independent scientific expert.

6   **R. SCHEDULING WORKSHEET**

7    *See supra*, Sections L-M.

8   **S. OTHER ISSUES**

9    The parties are not currently aware of any other significant issues affecting

10   the management of this case.

11    WHEREUPON, the parties, through counsel, hereby jointly submit this Joint

12   Report.

13                                        Respectfully submitted,

14   Dated:  March 25, 2022          By:    */s/ Stephen M. Doniger*

15                                         Stephen M. Doniger, Esq.

16                                         Christopher S. Ghazarian, Esq.
                                           Benjamin F. Tookey, Esq.
17                                         Attorneys for Plaintiffs

18

19   Dated:  March 25, 2022          By:    */s/ Peter Anderson*

20                                         Peter Anderson, Esq.
                                           Sean M. Sullivan, Esq.
21                                         Eric H. Lamm, Esq.
                                           DAVIS WRIGHT TREMAINE LLP
22                                         Attorneys for Defendants
                                           ABEL TESFAYE, HAL LEONARD
23                                         LLC, UNIVERSAL MUSIC
                                           GROUP, INC., UNIVERSAL
24                                         MUSIC PUBLISHING, INC.,
                                           UNIVERSAL MUSIC CORP.,
25                                         MATTITUDE MUSIC LLC,
                                           APPLE INC., HIPGNOSIS SONGS
26                                         GROUP, LLC, and AMAZON.COM,
                                           INC.
27

28

Pursuant to Civil L.R. 54-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

21